# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**LEMUEL SOTO-SANTIAGO,**

**Plaintiff,**

**v.**                                          **CIVIL NO. 15-2647 (GAG)**

**CORPORACION DEL FONDO DEL
SEGURO DEL ESTADO,**

**Defendant.**

## OPINION AND ORDER

Lemuel Soto-Santiago ("Plaintiff") sued his employer, the State Insurance Fund Corporation of Puerto Rico ("SIFC"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, as well as Puerto Rico Law 44 ("Law 44"), P.R. LAWS ANN. tit 1, §§ 501, *et seq.*, alleging disability discrimination and failure to accommodate. (Docket No. 1). Plaintiff moved for summary judgment,[1] and SIFC opposed the motion. (Docket Nos. 57; 64). Plaintiff replied, and SIFC sur-replied. (Docket Nos. 70; 74). Although SIFC sought and received permission to file its sur-reply (Docket No. 72; 73), Plaintiff moved to strike the sur-reply. (Docket No. 75). SIFC opposed the motion. (Docket No. 76).

After disposing of preliminary matters involving Plaintiff's motion to strike and Local Rule 56, the Court **DENIES** Plaintiff's motion for partial summary judgment at Docket No. 57.

---

[1] In his complaint, Plaintiff alleges disability discrimination and failure to accommodate under the ADA. (Docket No. 1 at 1, 8). In his motion for summary judgment, however, Plaintiff's discussion involves only his allegation of failure to accommodate. (Docket No. 57 at 11-23). Because Plaintiff has not raised a separate disability discrimination claim, the Court treats his motion as a motion for partial summary judgment only as to his failure to accommodate claim.

## I.     Local Rule 56

Plaintiff argues that SIFC failed to properly deny or controvert most of Plaintiff's statement of material facts and further, that it failed to properly support many of its own statements of material facts. (Docket No. 70 at 2-3). The Court agrees.

At the summary judgment stage, parties must follow Local Rule 56. Section (c) states that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." L. Cv. R. 56(c). This statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. "Each fact asserted in the statement *shall be supported by a record citation*." Id. (emphasis added). In addition to allowing an opposing party to admit, deny, or qualify the moving party's facts, the opposing party may submit additional facts "in a separate section." Id. Section (e) provides that the Court may "disregard any statement of fact not supported by a specific citation to record material" and notes that the Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Cv. R. 56(e).

If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as admitted; the First Circuit has consistently held that litigants ignore Local Rule 56 "at their peril." See Caban Hernandez v. Philip Morris USA, Inc., 486 F. 3d 1, 7 (1st Cir. 2007). This rule serves the enormously important purpose of "focusing a district court's attention on what is—and what is not—genuinely controverted." Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006).

**Civil No. 15-2647 (GAG)**

In its opposing statement of material facts, SIFC fails to support nearly all of its denials and qualifications with citations to the record.[2] (Docket No. 64 at 12-21). Because SIFC either admitted or improperly denied them, the Court, in its discretion, deems the following paragraphs of Plaintiff's statement of uncontested facts admitted: 1-8, 10-36, 38-49, 50, 56-60, 62-71, 75-80, 82-84, and 86.

The additional facts submitted by SIFC—with the exception of paragraphs 28-37—are similarly unsupported by record citations. Paragraphs 1-27 of SIFC's uncontested facts cite only to Plaintiff's statement of uncontested facts, not the record itself. (Docket No. 65 at 1-5 ¶¶ 1-27). Besides failing to cite to the record, many of SIFC's citations do not even correspond to the information in Plaintiff's statement of uncontested facts. See e.g., Docket Nos. 65 at 2 ¶ 6; 55 ¶ 7.[3] Local Rule 56(e) allows the Court to "disregard any statement of fact not supported by a specific citation to record material," and that is precisely what the Court will do here. L. Cv. R. 56(e). All paragraphs except 28-37 of SIFC's additional statement of facts are hereby disregarded.

This however, presents another problem. Of the paragraphs for which SIFC does provide record citations, only one paragraph references a page of a deposition actually contained in the record (SIFC did not include any submissions of its own). See Docket No. 65 at 6 ¶ 36. A citation to a record is all well and good, but the material to which the citation directs the reader must be available as an exhibit. With the exception of paragraph 36 of SIFC's additional facts, the Court, in its discretion, disregards the remaining additional statements presented by SIFC.

---

[2] The Court notes that SIFC requested and received multiple extensions of time to file its opposition, yet still failed to include the necessary material. (Docket Nos. 59; 61; 62; 63). By way of explanation, SIFC states: "[I]n recent weeks, undersigned counsel have been charged with representing [SIFC] in a myriad of cases that have absorbed [SIFC]'s focus and best efforts." (Docket No. 74 at 4). This, unfortunately, does not excuse an almost complete failure to adhere to the basic rules governing civil procedure.

[3] For instance, SIFC states: "Despite the accident and resulting disability, Plaintiff was able to continue performing his duties as Mayor of Arecibo from 2005-2008, and he was re-elected and continued in office until January 13, 2013. PUF ¶7." (Docket No. 65 at 2 ¶ 6). When the reader turns to Plaintiff's uncontested facts paragraph 7, however, the paragraph states: "Mrs. Gladys Meléndez served as Deputy Director of the Office of Labor Relations during Mrs. Ramos-Rivera's tenure as Associate Director." (Docket No. 55 ¶ 7).

1   The rules governing summary judgment practice are critically important; they "ease the

2  district court's operose task and . . . prevent parties from unfairly shifting the burdens of litigation

3  to the court." Caban Hernandez, 486 F.3d at 8. SIFC is admonished to adhere to them in future or

4  risk consequences similar to those imposed here.

5   **II.     Plaintiff's Motion to Strike**

6   With the above as a backdrop, the Court turns to Plaintiff's motion to strike SIFC's sur-reply

7  under Federal Rule of Civil Procedure 12(f). (Docket No. 75). "Such a motion may be employed . .

8  . only to obtain relief from 'redundant, immaterial, impertinent, or scandalous matter.'" Boreri v.

9  Fiat S.p.A., 763 F.2d 17, 23 (1st Cir. 1985) (quoting FED. R. CIV. P. 12(f)). "[S]uch motions are

10 narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion."

11 Id. (citations omitted). "Rule 12(f) motions are not typically granted without a showing of prejudice

12 to the moving party." Sheffield v. City of Boston, 319 F.R.D. 52, 54 (D. Mass. 2016) (citation

13 omitted).

14   Here, SIFC's sur-reply contains a jumble of case law, admissions of mistake, and excuses.

15 See Docket No. 74. SIFC also includes some—but not all—of the evidentiary material missing from

16 its additional statement of facts. See Docket No. 74-1-4.

17   Plaintiff argues that allowing the sur-reply would be prejudicial because the additional

18 evidence submitted by SIFC supports previously unsupported statements of additional facts. (Docket

19 No. 75 ¶ 6). In Plaintiff's reply to SIFC's statement of additional facts, Plaintiff denies a number of

20 SIFC's statements on the basis of SIFC's failure to include, not a citation to the record, but the record

21 material itself.[4] (Docket No. 71 at ¶¶ 28-37). Allowing SIFC to include the material well after the

22 fact, Plaintiff argues, would be prejudicial unless Plaintiff was allowed to refile the reply statement.

23

24   [4] Specifically, Defendant includes ten statements in its additional facts that cite to portions of the record not
submitted by Plaintiff *or* Defendant. See Docket No. 65 at 5-7 ¶¶ 28-37.

4

(Docket No. 75 ¶ 6). This would be true, if the Court were to consider the material attached to SIFC's sur-reply.

The disposition of SIFC's additional statement of facts, however, renders this point moot. Because SIFC did not follow the proper procedure with respect to its statement of additional facts, the Court, in its discretion, has disregarded all but paragraph 36. As such, the Court also disregards the evidence attached to the SIFC's sur-reply, thus eliminating any potential prejudice to Plaintiff. Because motions to strike are "narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion," (Boreri v. Fiat S.p.A., 763 F.2d at 23) (citations omitted), and because there is no prejudice to Plaintiff, the Court **DENIES** Plaintiff's motion to strike.

## III. Relevant Factual Background

Plaintiff's and SIFC's statements of material uncontested facts ("PSUMF" and "DSUMF" respectively), viewed in the light most favorable to the nonmovants, reveal the following undisputed material facts:

SIFC is a public corporation in Puerto Rico which does not receive funds from the Commonwealth's General Fund. (PSUMF ¶ 1; DSUMF at 7 ¶ 1). Plaintiff began working for SIFC on September 1, 1993, and in October 2000, Plaintiff became a medical legal secretary. (PSUMF ¶ 11; DSUMF at 7 ¶ 11).

From 2005 to 2013, Plaintiff served as mayor for the municipality of Arecibo. (PSUMF ¶ 12; DSUMF at 7 ¶ 12). On December 13, 2005, Plaintiff sustained bodily trauma and spinal cord lacerations from a motorcycle accident. (PSUMF ¶¶ 13-14; DSUMF at 7 ¶¶ 13-14). As a result of the accident, Plaintiff has six screws and a section of metal in his left ankle, two screws and a metal rod inside his left thighbone, three screws and a metal rod inside his right thighbone, a neuro-stimulator in his lower back, bladder issues, a bone implant in the C7 vertebral column, and atrophy

1  in both hands. (PSUMF ¶ 15; DSUMF at 7 ¶ 15). Plaintiff requires a walker and is significantly

2  restricted as to the duration, manner, and conditions under which he can perform certain daily tasks,

3  as compared with an average person in the general population. (PSUMF ¶¶ 15-16; DSUMF at 7

4  ¶ 15-16).

5  In January 2013, Plaintiff returned to work for SIFC as a legal medical secretary. (PSUMF

6  ¶ 17; DSUMF at 7 ¶ 17). Plaintiff's office is directed by Dr. Luis H. Padró-Rosado ("Dr. Padró").

7  (PSUMF ¶ 18; DSUMF at 7 ¶ 18). On January 28, 2013, Plaintiff submitted a written request for

8  reasonable accommodations, asking for assistance retrieving medical files. (PSUMF ¶ 19; DSUMF

9  at 7 ¶ 19). He also made a verbal request to his supervisor, Yanitza Oliveras, for an office chair with

10  better back support. (PSUMF ¶¶ 20-21). Plaintiff made the request because the chair that he was

11  using at the time was unstable and prevented him from sitting for short periods of time without

12  causing severe back pain. (PSUMF ¶ 23).

13  On February 26, 2013, Plaintiff received a letter from the interim associate director, Mr.

14  Francisco Ortiz-Sued. (PSUMF ¶ 24; DSUMF at 9 ¶ 24). Mr. Ortiz-Sued asked Plaintiff for medical

15  certification of the conditions listed in his request so that Mr. Ortiz-Sued could determine whether

16  Plaintiff qualified for reasonable accommodations. (PSUMF ¶ 25; DSUMF at 9 ¶ 25). Plaintiff

17  provided the requested documents. (PSUMF ¶ 26; DSUMF at 9 ¶ 26). Plaintiff fully complied with

18  all of SIFC's requirements and requests for information in order to complete his reasonable

19  accommodation request. (PSUMF ¶ 79; DSUMF at 14 ¶ 79).

20  On July 18, 2013, Plaintiff received a letter from the associate director of the Office of Labor

21  Relations, Attorney Ramos-Rivera, asking for authorization to conduct a medical evaluation to

22  assess whether Plaintiff was fit to perform the duties of his position. (PSUMF ¶¶ 27-28; DSUMF at

23  9 ¶¶ 27-28).

24

1    On July 19, 2013, Plaintiff met with the deputy director of the Office of Labor Relations,

2   Gladys Meléndez, regarding his request for reasonable accommodation and asked her for a chair

3   with better back support. (PSUMF ¶¶ 29-30).[5] Mrs. Meléndez also met with Dr. Padró, whom she

4   instructed to have Plaintiff evaluated by a rehabilitation specialist. (PSUMF ¶ 31; DSUMF at 9 ¶ 31).

5    Plaintiff's functions changed after the July 19, 2013 meeting with Gladys Meléndez.

6   (PSUMF ¶ 42; DSUMF at 9 ¶ 42). Following a meeting with Arecibo regional director María de los

7   Angeles Carrión Cancel and Dr. Padró, Plaintiff became the only medical legal secretary in the office

8   assigned to close cases. (PSUMF ¶ 42-43; DSUMF at 9 ¶ 42-43). According to SIFC's official job

9   description, effective June 1, 2000, the position of a medical legal secretary involved transcribing

10  medical and legal documents with a computer and requesting—but not specifically retrieving—

11  records. (PSUMF ¶¶ 46-49; DSUMF at 9 ¶¶ 46-49). Dr. Padró stated that the only function that

12  Plaintiff could not perform was retrieving records. (PSUMF ¶ 44; DSUMF at 9 ¶ 44).

13   Between July 19, 2013 and October 16, 2013, Attorney Ramos-Rivera did not follow up on

14  the letter sent to Dr. Padró by Ms. Meléndez when she met with him on July 19, 2013. (PSUMF

15  ¶ 41; DSUMF at 9 ¶ 41). The Office of Labor Relations and Equal Employment Opportunities

16  ("OLREEO") sent Dr. Padró a letter dated January 31, 2014, instructing him to refer Plaintiff to a

17  vocational rehabilitation specialist in order to ascertain what sort of ergonomic equipment he

18  required. (PSUMF ¶ 32; DSUMF at 9 ¶ 32). The letter to also instructed Dr. Padró to submit a copy

19  of the specialist's evaluation and the purchase order for the recommended equipment. (PSUMF ¶

20  33; DSUMF at 9 ¶ 33). The letter further stated that the ORLEEO determined that Plaintiff qualified

21

---

22    [5] Defendant contends that by using the word "reiterating" Plaintiff mischaracterizes the nature his
request to Mrs. Meléndez. (Docket No. 64 at 14). The Court agrees. There is nothing in Plaintiff's record citations
23  indicating that Plaintiff made a prior request to Mrs. Meléndez. There is support for Plaintiff's contention that
he broached the subject in January 2013 with Yelitza Oliveras, (Docket No. 55-2 at 64 ¶¶ 18-20), but not that he
24  ever asked Mrs. Meléndez before July 19, 2013.

1  as an individual with a disability as defined under the ADA, a fact which SIFC does not dispute.

2  (PSUMF ¶¶ 35-36; DSUMF at 9 ¶¶ 35-36).

3      On January 31, 2014, Plaintiff received a letter from Attorney Ramos-Rivera, notifying him

4  that he qualified for reasonable accommodation. (PSUMF ¶ 38; DSUMF at 9 ¶ 38). The letter noted

5  that during his interview, Plaintiff had requested assistance retrieving medical files and a chair with

6  better back support, but because Plaintiff was no longer required to retrieve files, his request for

7  assistance with such files was moot. (PSUMF ¶¶ 39-40; DSUMF at 9 ¶ 39-40). The letter also

8  explained that a letter was sent to Dr. Padró requesting that a vocational rehabilitation specialist

9  evaluate Plaintiff and make a recommendation as to assistive equipment. (PSUMF ¶ 38; DSUMF at

10  9 ¶ 38).

11      On February 24, 2014, Mayra Berrios-Pérez sent a letter to the occupational therapy

12  supervisor of the Arecibo region, María Elena Román, requesting a visit to Plaintiff's workplace to

13  make a recommendation as to ergonomic equipment. (PSUMF ¶ 58; DSUMF at 12 ¶ 58). Such a

14  visit was scheduled on March 12, 2014. (PSUMF ¶ 59; DSUMF at 12 ¶ 59).

15      Mrs. Berrios-Pérez and Dr. Padró both signed a letter to Attorney Ramos-Rivera, dated April

16  11, 2014, listing various recommended ergonomic office equipment, including an ergonomic chair

17  and wheelchair. (PSUMF ¶ 63; DSUMF at 12 ¶ 63). On May 16, 2014, Ms. Meléndez sent a letter

18  to Attorney Ramos-Rivera, accepting the recommendations. (PSUMF ¶ 64; DSUMF at 12 ¶ 64). Dr.

19  Padró received a letter from Attorney Ramos-Rivera, dated May 16, 2014, instructing him to make

20  all arrangements necessary for the purchase of the equipment, and orthopedic chair recommended

21  by the rehabilitation specialist, Mayra Berríos-Pérez. (PSUMF ¶ 68; DSUMF at 12 ¶ 68).

22      On June 2, 2014, Plaintiff received a notification from Attorney Ramos-Rivera approving

23  the use the requested equipment to comply with Plaintiff's request for reasonable accommodation.

24

(PSUMF ¶¶ 65; 67; DSUMF at 12 ¶¶ 65; 67). The notification indicated that Dr. Padró would make the necessary arrangements to purchase said equipment, "taking into consideration the recommendations made by the rehabilitation specialist, the characteristics of the employee's work area, and the budgetary constraints of the Corporation." (PSUMF ¶ 66; DSUMF at 12 ¶ 66). On June 9, 2014, Dr. Padró forwarded the recommendation to the acting chief of administrative services, Mr. Fernando Muñoz. (PSUMF ¶ 70; DSUMF at 12 ¶ 70).

Attorney Ramos-Rivera does not recall whether she or anyone under her supervision took action between June and December of 2014 to verify that Plaintiff received the equipment. (PSUMF ¶ 71; DSUMF at 12 ¶ 71). Dr. Padró does not remember whether he alerted the OLREEO that the equipment recommended for Plaintiff had not yet been purchased, (PSUMF ¶ 75; DSUMF at 13 ¶ 75), nor does he remember whether he or anyone under his supervision made any further inquiry with respect to its purchase. (PSUMF ¶ 76; DSUMF at 13 ¶ 76).

Plaintiff had not received the requested equipment at the time he filed his federal court complaint on October 26, 2015. (Docket No. 1; PSUMF ¶¶ 77-78). On February 9, 2016, Attorney Ramos-Rivera sent a letter to the director of administrative services, Edmir Rivera-Mojica, requesting his help to facilitate the purchase of the equipment recommended for Plaintiff. (PSUMF ¶¶ 80-81; DSUMF at 14 ¶¶ 80-81). Plaintiff received the requested accommodations and equipment on March 30, 2016. (PSUMF ¶ 82; DSUMF at 15 ¶ 82).

## IV. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue

is genuine if it may reasonably be resolved in favor of either party at trial . . . and material if it possess[es] the capacity to sway the outcome of the litigation under the applicable law." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations and quotations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**V.    Discussion**

"Under the ADA, employers are required to provide reasonable accommodation to an otherwise qualified applicant or employee with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer's business." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 106 (1st Cir. 2005) (citing 42 U.S.C. § 12112(b)(5)(A) (2000)). In the context of a failure to reasonably accommodate claim, "it falls to the plaintiff to show that the accommodation would have enabled h[im] to perform the essential functions of the job—and that the accommodation would have been reasonable in light of relevant factors such as expense, size of the employer, etc." Rios-Jimenez v. Principi, 520 F.3d 31, 41 (1st Cir. 2008) There is no exact framework for how to address this requirement, but to succeed on a claim for failure to accommodate, the plaintiff must address them at some point. Id. ("It matters less at precisely what stage of the rubric the issues get tackled; more important is that they are confronted . . . .").

A claim of failure to accommodate has separate requirements than a claim of disability discrimination. In addition to proving the above, to succeed on a motion for summary judgment on a failure to accommodate claim, a plaintiff must also prove that (1) he "is a qualified individual with a disability within the meaning of the ADA;" (2) he "worked for an employer covered by the ADA;" (3) his "employer, despite its knowledge of the employee's limitations, did not accommodate those limitations;" and (4) "the employer's failure to accommodate the known limitations affected the terms, conditions, or privileges of the plaintiff's employment." Orta–Castro v. Merck, Sharp & Dohme Quimica P.R. Inc., 447 F.3d. 105, 112 (1st Cir. 2006) (citing Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999)).

A. <u>Reasonableness Factors</u>

It is for Plaintiff to show "that the accommodation would have been reasonable in light of relevant factors such as expense, size of the employer, etc." <u>Rios-Jimenez</u>, 520 F.3d at 41. This, Plaintiff has not done. No specific evidence is presented with respect to the cost of the requested accommodations. In his statement of uncontested facts, Plaintiff asserts that the acting chief of administrative services never explicitly told Dr. Padró that the equipment was too expensive to be purchased. (PSUMF ¶ 73). SIFC does not contest the content of the statement, rather it takes issue with the context and interpretation of the testimony. (DSUMF at 13 ¶ 73-74). SIFC contends that Dr. Padró's testimony demonstrates that SIFC was "under a financial strain that prevented it from purchasing the most essential supplies." <u>Id.</u> Specifically, when questioned about the delay in purchasing the requested items, Dr. Padró responded: "[W]e don't even have money to buy the essential things for the work functions in our office." <u>See</u> Docket No. 55-4 at 82 ¶ 10-12.

When viewed in the light most favorable to the nonmoving SIFC, an inference may be made that the cost of the equipment was more than SIFC could afford. Plaintiff has not presented any information to counter this inference. If the equipment was too expensive, it is possible that the accommodation would not have been reasonable. As such, a genuine issue exists as to a material fact with respect to this requirement.

B. <u>Impact on Terms, Conditions, or Privileges of Employment</u>

The fourth element in establishing a prima facie case is whether SIFC's "failure to accommodate [Plaintiff's] known limitations affected the terms, conditions, or privileges of [his] employment." <u>Orta–Castro</u>, 447 F.3d. at 112 (citations omitted). Plaintiff, however, has not presented evidence to indicate that he was demoted, fired, paid less, or subjected to any other such negative action by SIFC.

1    It could very well be that SIFC's failure to accommodate Plaintiff's limitations did

2  "affect[] the terms, conditions, or privileges of [his] employment." <u>Orta–Castro</u>, 447 F.3d. at 112.

3  But based on the evidence—or lack thereof—the issue could "'reasonably be resolved in favor of

4  either party at trial.'" <u>Iverson</u>, 452 F.3d at 98 (quoting <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48

5  (1st Cir. 1990). Resolution of this issue would "'sway the outcome of the litigation under the

6  applicable law.'" <u>Id.</u> (quoting <u>Cadle Co. v. Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997).

7    Because genuine issues of material fact exist, further analysis of the remaining elements of

8  Plaintiff's prima facie failure to accommodate claim is unnecessary. Summary judgment at this

9  time is not appropriate at this time.

10       C.  <u>Local Law 44</u>

11    "In conjunction with the ADA, Law 44 creates an obligation for any employer to provide

12  reasonable accommodations, and prohibits discrimination against persons with disabilities."

13  <u>Roman Martinez v. Delta Maint. Serv., Inc.</u>, 229 F. Supp. 2d 79, 85 (D.P.R. 2002). The genuine

14  issues of material fact remaining in the ADA failure to reasonably accommodate claim are also

15  present with respect to Plaintiff's Local Law 44 claim, making summary judgment at this time

16  inappropriate.

17  **VI.    Conclusion**

18    For the reasons stated above, Plaintiff's motion for summary judgment at Docket No. 57

19  and Plaintiff's motion to strike at Docket No. 75 are **DENIED**.

20    **SO ORDERED.**

21    In San Juan, Puerto Rico this 27th day of February, 2018.

22                              *s/ Gustavo A. Gelpí*
                               GUSTAVO A. GELPI
23                            United States District Judge

24