UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LEMUEL SOTO-SANTIAGO              )
                                 )
              Plaintiff,          )
                                 )
        v.                        )              3:15-cv-02647-JAW-SCC
                                 )
CORPORACION DEL FONDO DEL        )
SEGURO DEL ESTADO                 )
                                 )
              Defendant.          )

## ORDER ON MOTION FOR INTEREST, ATTORNEY'S FEES, AND SANCTIONS

A plaintiff, having settled a claim against a defendant, seeks interest, attorney's fees, and sanctions due to late disbursement of the settlement amount. The Court concludes that the terms of the settlement agreement require the defendant pay interest and grants that portion of the plaintiff's motion. The Court denies the plaintiff's request for an award of attorney's fees because to be reimbursable, the settlement agreement requires that the attorney's fees be necessary, and the Court does not conclude in the circumstances of this case that the plaintiff has shown the attorney's fees were necessary. Finally, the Court denies the motion for sanctions because it views neither party as blameless.

## I.    BACKGROUND

### A.    The Complaint and Settlement

On October 26, 2015, Lemuel Soto-Santiago filed a civil complaint against his

employer, the State Insurance Fund Corporation of Puerto Rico (SIFCPR),[1] alleging that SIFCPR violated the Americans with Disability Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and Puerto Rico Law 44 (Law 44).  P.R. Laws Ann. tit. 1, §§ 501, *et seq.*  At a final pretrial conference on November 6, 2019, this Judge scheduled the case for trial from January 13, 2020 through January 20, 2020, *Min. Entry* (ECF No. 126); however, with trial looming, the parties turned more earnestly toward settlement. On November 8, 2019, through the auspices of then Magistrate Judge, now District Judge Silvia Carreno-Coll, the parties arrived at a settlement.  *Min. Entry* (ECF No. 127) ("The parties reached an agreement dispositive of all matters asserted in the complaint").  Magistrate Judge Carreno-Coll ordered the parties to file a stipulation of dismissal by November 15, 2019.  *Id.*

On November 15, 2019, Mr. Soto-Santiago filed an informative motion, noting that due to the need for SIFCPR to review the proposed terms of a settlement agreement and the physical absence of defense counsel from Puerto Rico, if SIFCPR sought an extension for filing the stipulation of dismissal, Mr. Soto-Santiago would not object.  *Informative Mot. Regarding Filing of Stip.* (ECF No. 128).  On November 18, 2019, the Court granted the informative motion and extended the deadline for filing the stipulation of dismissal to November 20, 2019.  *Order* (ECF No. 129).  On November 20, 2019, SIFCPR filed a motion for extension without objection from Mr. Soto-Santiago, requesting until November 25, 2019, to file the stipulation of

---

[1]    Mr. Soto-Santiago impleaded SIFCPR using its Spanish name, Corporacion del Fondo del Seguro Estado.  *Compl.* (ECF No. 1).  However, the parties and the Court consistently referred to the Defendant using its English name and abbreviation; the Court continues this practice in this Order. *See Op. and Order* at 1 (ECF No. 79) (Gelpi, C.J.).

dismissal. *Req. for Extension of Time to File Stip.* (ECF No. 130). On November 22, 2019, the Court granted the motion and extended the time for filing the stipulation of dismissal to November 25, 2019. *Order* (ECF No. 131).

When the parties failed to timely file the stipulation of dismissal as ordered by November 25, 2019, the Court issued an order dated December 2, 2019, ordering the parties to file a stipulation of dismissal by December 6, 2019, and informing them that if they did not do so, the Court would dismiss the lawsuit with prejudice and without costs. *Order* (ECF No. 132). On December 2, 2019, SIFCPR filed a motion, explaining that the delay was due to the "inner bureaucracies of SIFC[PR]," notifying the Court that a stipulation would be filed by December 6, 2019, and asking the Court not to dismiss the case with prejudice. *Informative Mot. Regarding Order [Docket No. 132]* (ECF No. 133). The Court noted the informative motion on December 6, 2019. *Order* (ECF No. 134). The Court's December 2, 2019 order precipitated an emergency motion from Mr. Soto-Santiago filed on December 2, 2019. *Emer. Mot. Requesting Recons. of Order at Docket Entry No. 132* (ECF No. 135). On December 3, 2019, the Court granted the motion for reconsideration and struck the part of the December 2, 2019, order providing that the Complaint would be dismissed with prejudice but maintained the December 6, 2019, date for the filing of the stipulation of dismissal. *Order* (ECF No. 136).

On December 6, 2019, Mr. Soto-Santiago filed joint motions to restrict and submitting a confidential settlement agreement and general waiver, both of which the Court immediately granted. *Joint Mot. to Restrict* (ECF No. 137); *Joint Mot.*

*Submitting Confidential Settlement Agreement and General Waiver* (ECF No. 138); *Order* (ECF No. 139); *Order* (ECF No. 140). On December 6, 2019, the Court issued a judgment, dismissing the Complaint with prejudice and without costs. *J.* (ECF No. 142).

### B.    The Failed Payment

On December 20, 2019, SIFCPR filed an informative motion that stated in part:

> The undersigned wishes to inform the Honorable Court that monies regarding the confidential settlement agreement (Docket [N]o. 138) have been consigned at the Court.

*Informative Mot. Regarding Docket No. 138* (ECF No. 143). On December 20, 2019, the Court noted SIFCPR's informative motion. *Order* (ECF No. 144). The Court thought the matter amicably resolved.

### C.    The Motion to Compel Payment and for Attorney's Fees and Sanctions and the Response

On January 8, 2020, Mr. Soto-Santiago filed a motion to restrict to allow him to file a motion with the Court discussing the confidential settlement. *Mot. to Restrict* (ECF No. 145). The motion to restrict was immediately followed by a motion to compel disbursement, to compel payment, and for attorney's fees, costs, and sanctions. *Mot. for Disbursement of Funds, or in the Alternative, to Compel Payment of the Settlement Amount, and the Imposition of Atty's Fees, Costs and Sanctions* (ECF No. 146). The Court granted the motion to restrict on January 9, 2020. *Order* (ECF No. 147).

On January 9, 2020, SIFCPR filed a motion to deposit funds and an informative motion regarding the motion to consign funds. *Mot. to Consign Funds*

(ECF No. 148); *Informative Mot. Regarding Mot. to Consign Funds* (ECF No. 149) (*SIFCPR Inform. Mot. Regarding Consignment*).  In the informative motion, SIFCPR informed the Court that after sending a corporate check to the Court on December 20, 2019, SIFCPR learned from the Clerk's Office that it could not accept the check because it was not a manager's check and further notified the Court that SIFCPR was in the process of obtaining a manager's check in compliance with the Clerk of Court's requirement. *SIFCPR Inform. Mot. Regarding Consignment* at 1.

On January 10, 2020, Mr. Soto-Santiago filed a motion to restrict and a response to SIFCPR's January 9, 2020, informative motion.  *Mot. to Restrict* (ECF No. 150); *Resp. to Def.'s "Informative Mot. Regarding Mot. to Consign Funds"* (ECF No. 151).  On January 10, 2020, the Court granted Mr. Soto-Santiago's motion to restrict. *Order* (ECF No. 154). On January 10, 2020, SIFCPR filed a reply to Mr. Soto-Santiago's motion.  *Reply to Resp. to Def.'s "Informative Mot. to Consign Funds"* (ECF No. 152) (*SIFCPR's Reply*).  On January 10, 2020, SIFCPR filed an urgent motion regarding payment of the settlement amount in which it stated that SIFCPR was willing to wire the money to the Clerk of Court.  *Urgent Mot. Regarding Settlement Payment* (ECF No. 153).  On January 10, 2020, the Court noted SIFCPR's January 10, 2020, informative motion.  *Order* (ECF No. 155).

Then, on January 13, 2020, SIFCPR informed the Court that "due to the inner bureaucracies of the SIFC[PR] in the process of issuing checks," the check would not be issued on January 13, 2020, but SIFCPR was "working diligently so that the same can be issued and consigned by tomorrow Tuesday January 14, 2020."  *Informative*

*Mot. Regarding Status of Payment of Settlement Amount* (ECF No. 156).  On January 13, 2020, the Court noted the informative motion.  (ECF No. 157).

### D.    The Payment

On January 14, 2020, SIFCPR filed a second motion of consignment.  *Mot. of Consignment* (ECF No. 158).  SIFCPR represented that "the Settlement Amount has been duly consigned to the clerk of the United States District Court of Puerto Rico, with an official check issued by Banco Popular de Puerto Rico, pursuant to the Agreement." *Id.* at 1.  The Clerk's Office noted that it received SIFCPR's check, that the check would be deposited the next working day, that the check would be placed in an interest-bearing account, and that the funds would be available after seven working days pursuant to District of Puerto Rico Local Rule 67.

On January 17, 2020, Mr. Soto-Santiago filed a motion to restrict document and a motion for disbursement of funds as well as a motion for interest, attorney's fees, and sanctions. *Mot. to Restrict* (ECF No. 159); *Mot. Requesting Disbursement of the Settlement Amount and Order Compelling Def. to Pay Interest for Delay in Payment, Att'y's Fees and Monetary Sanctions* (ECF No. 160) (*Pl.'s Mot.*).  On January 17, 2020, the Court granted the motion to restrict and noted the motion for disbursement and other relief.  *Order* (ECF No. 161); *Order* (ECF No. 162).  Also, on January 17, 2020, SIFCPR filed a motion for extension of time to respond to Mr. Soto-Santiago's motion for disbursement and other relief until Wednesday, January 22, 2020.  *Mot. for Extension of Time to File Resp. to Mot. Requesting Disbursement of Settlement Amount and Order Compelling Def. to Pay Interest for Delay in Payment,*

*Att'y Fees and Monetary Sanctions* (ECF No. 163).  On January 17, 2020, the Court granted SIFCPR's motion for extension.  *Order* (ECF No. 164).  On January 22, 2020, SIFCPR filed its response to Mr. Soto-Santiago's motion for disbursement and other relief.  *Reply to Mot. Requesting Disbursement of the Settlement Amount and Order Compelling Def. to Pay Interest for Delay in Payment, Att'y Fees and Monetary Sanctions* (ECF No. 165) (*SIFCPR's Opp'n*).

On January 23, 2020, Mr. Soto-Santiago filed a motion to restrict and a motion requesting authorization to disburse the funds without prejudice to the motion for other relief.  *Mot. to Restrict* (ECF No. 166); *Mot. Requesting Authorization for Disbursement Without Prejudice to Other Relief Requested in Mot. at Docket Entry No. 160* (ECF No. 167).  On February 4, 2020, Mr. Soto Santiago filed a motion to restrict and a second motion requesting authorization to disburse the proceeds without prejudice.  *Mot. to Restrict* (ECF No. 168); *Mot. Requesting Authorization for Disbursement Without Prejudice to Other Relief Requested in Mot. at Docket Entry No. 160* (ECF No. 169).  On February 5, 2020, the Court granted the motions to restrict, granted the motion for disbursement without prejudice, deferred ruling on the motion for other relief, and dismissed as moot the second motion requesting authorization.  *Order* (ECF No. 172); *Order* (ECF No. 173); *Order Granting Mot. for Disbursement and Deferring Ruling on Mot. Requesting Order* (ECF No. 170); *Order Finding As Moot Mot. Requesting Order* (ECF No. 171).

According to the docket, the Clerk's Office disbursed the funds to Mr. Soto-Santiago on February 19, 2020; what remains is Mr. Soto-Santiago's motion for interest, attorney's fees, and sanctions.

## II.    THE POSITIONS OF THE PARTIES

### A.    Lemuel Soto-Santiago's Position

Mr. Soto-Santiago begins by stating that pursuant to the Settlement Agreement, SIFCPR was "supposed to deposit $99,000.00 (the <u>Settlement Amount</u>) with the Court Clerk no later than December 31, 2019." *Pl.'s Mot.* at 1.  Mr. Soto-Santiago says that "[f]ourteen days after the deadline to do so, [SIFCPR] finally deposited the Settlement Amount, only after [SIFCPR] misrepresented that a deposit had been made, plaintiff had moved for enforcement, and after two aborted attempts to deposit the Settlement Amount." *Id.*  Mr. Soto-Santiago demands interest, his attorney's fees, and a sanction. *Id.*

Mr. Soto-Santiago points to the language in the Settlement Agreement that requires interest at a rate of 4.5% if payment is not made by December 31, 2019. *Id.* at 2.  He also notes there is an attorney's fee provision. *Id.*  Pursuant to the terms of the Settlement Agreement, Mr. Soto-Santiago notes that the Court retained jurisdiction over the case to resolve any disputes arising from the Settlement Agreement. *Id.*  Mr. Soto-Santiago reviews the events leading up to his filing the motion for compliance. *Id.* at 2-5.

Mr. Soto-Santiago states that he is entitled to an additional $476.19 in interest, calculating the additional interest on $99,000 from December 6, 2019 through

January 14, 2020. *Id.* at 5. He demands $1,330.50 in attorney's fees. *Id.* at 5-8. Finally, he asks for an "appropriate amount" of monetary sanction but does not suggest a figure. *Id.* at 8.

### B.    SIFCPR's Position

SIFCPR protests that it entered the Settlement Agreement "in good faith, intending to loyally fulfill its stipulations." *SIFCPR's Opp'n* at 1. But the "dates in which the Settlement Amount was set to be disbursed coincided with the SIFC[PR]'s employee tasked with the check payment holiday vacation." *Id.* Therefore, "unbeknownst to the undersigned counsel, the SIFC[PR] lacked the authorized personnel that could produce the Settlement Amount in question by the timeframe stipulated in the Settlement Agreement." *Id.* at 1-2.

SIFC[PR] adds that "counsel's offices had closed over the holiday." *Id.* at 2. SIFCPR counsel is outraged that Mr. Soto-Santiago's lawyer sent only one email about this situation to the closed law office, when he had Attorney Peter Miller's personal phone number and failed to use it. *Id.* SIFC[PR] disputes the need for Mr. Soto-Santiago's attorney's fees when "a simple phone call to our cell phone line would have avoided this situation." *Id.*

Following the holidays, Puerto Rico had been "plagued by a stream of earthquake activity, resulting in the entire power system being shut down and damages to [SIFCPR's counsels'] offices" that they were still attempting to correct as of January 22, 2020. *Id.* SIFCPR counsel further explain that they were unable even to access their offices until January 9, 2020, after the holiday. *Id.* at 3. According to

SIFCPR's counsel, the earthquakes also caused SIFCPR itself to "shut down operations and inevitably delayed the preparation of the check that contained the Settlement Amount." *Id.* at 2-3. Thus, SIFCPR says that its failure to timely pay should be excused due to *force majeure. Id.* at 3. SIFCPR considers the attorneys stated time to be "outrageous" for work that in its view "may have lasted less than ten minutes." *Id.* at 4. Now that Mr. Soto-Santiago has been paid in full, SIFCPR urges the Court to consider the case closed. *Id.*

## III. LEGAL STANDARDS, LOCAL RULE 67, AND THE TERMS OF THE SETTLEMENT AGREEMENT

### A. Caselaw

This "court retains an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court." *Widi v. Strafford Cty.*, No. 13-cv-536-SM, 2020 U.S. Dist. LEXIS 16471, at *4 (D.N.H. Jan. 9, 2020) (quoting *Dankese v. Def. Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982)), *adopted by, mot. granted by* 2020 U.S. Dist. LEXIS 13748 (D.N.H. Jan. 28, 2020). Here, in the judgment, the Court retained jurisdiction "over any disputes between the parties as to the enforcement of the terms of the confidential settlement agreement." *J.* at 1. "Settlement agreements, like other contracts, abide by the usual considerations of contract interpretation." *Widi*, 2020 U.S. Dist. LEXIS 16471, at *5 (citing *Accusoft Corp. v. Palo*, 237 F.3d 31, 39-40 (1st Cir. 2001).

**B.      Local Rule 67**

Local Rule 67 implements the provisions of Federal Rule of Civil Procedure 67

and controls the deposit of funds into the United States District Court for Puerto Rico.

Local Rule 67 provides in relevant part:

**(a)      Receipt of Funds.**

All funds received by the clerk in any case pending or adjudicated before
this Court pursuant to 28 U.S.C. § 2041 shall be deposited with the
Treasury of the United States, in the name and to the credit of this Court
in a local banking institution authorized to accept deposits on behalf of
the United States Department of the Treasury.

All funds tendered to the Clerk for deposit pursuant to Fed.R.Civ. 67
must be accompanied by an order of this Court permitting the deposit,
unless a relevant statue allows or requires such a deposit.    The
tendering of such an order at the time of tendering the funds constitutes
effective service of the order on the clerk.

The procedures for receipt, disbursement and custody of funds deposited
with this Court shall not be waived except by order of this Court.

**(b)      Investment of Registry Funds.**

**(1) Investment of Funds.**  All funds tendered to the clerk pursuant
to Fed.R.Civ.P. 67, in an amount equal to or greater than one
thousand dollars ($1,000.00), shall be deposited in an interest-
bearing account with a local banking institution insured with the
Federal Deposit Insurance Corporation (FDIC), unless the order for
deposit of such funds requires a different type of financial
investment.

---

**(c)      Funds Accepted by the Court.**

All funds tendered to the clerk pursuant to 28 U.S.C., § 2041 or
Fed.R.Civ.P. 67, shall be in cash, money order, cashier's check or
manager's check.  Personal checks will be accepted for an amount not to

exceed $1,000 from those payors not included on the Court's list of payors having issued a check with insufficient funds to the clerk.

D.P.R. Loc. R. 67.

### C.    The Terms of the Settlement Agreement

As the Court understands it, the essential underlying facts are not in dispute: the parties do not dispute that SIFCPR attempted and failed to make a payment on December 20, 2019; that SIFCPR's sole employee authorized to make payment went on an extended vacation, leaving no one within SIFCPR who could authorize a check in this amount; that defense counsel's law office was closed during the Christmas holiday; that Puerto Rico suffered an earthquake in late December 2019 followed by aftershocks, damaging defense counsel's law office and hampering SIFCPR's operations; and that SIFCPR deposited payment of the Settlement Amount in accordance with the Local Rule on January 14, 2020.

The Court turns to the relevant language of the Settlement Agreement:

THIRD:     Payment of the Settlement Amount shall be made by Defendant, which shall issue and deposit an official check payable to the Clerk of the United States District Court, on or before <u>December 31,2019</u>.

FIFTH:     Defendant shall strictly comply with its payment obligation agreed to in the Agreement, and explicitly acknowledges that such payment obligation is an essential and material term to this Agreement. The parties acknowledge that the Settlement Amount will be paid by Defendant. Accordingly, in the event of any failure to comply with the payment schedule, any claim for enforcement shall be made against the Defendant.

SIXTH:     Provided that Defendant complies with timely payment, the Settlement Amount will not accrue interest for the duration of this Agreement. If payment is made after

12

December 31, 2019, the Settlement Amount shall accrue interest at a rate of 4.5% from the entry of Judgment until full satisfaction.

EIGHTH:   The payment of the Settlement Amount by Defendant to Plaintiff includes full compensation for all claims by Plaintiff against Defendant, including, but not limited, to compensatory damages, pre- and post-judgment interest, attorneys' fees, and litigation expenses. However, the Parties do not waive the right to request from the court attorneys' fees and/or expenses necessary for the enforcement of the Agreement as stated herein if necessary.

TWELVE:   The Parties agree that this Court shall retain exclusive jurisdiction over all matters relating to this Agreement and the disbursement of all monies pursuant thereto, including the enforcement of the same, until final payment is made to Plaintiff. In the event court intervention is necessary to enforce the terms of the Agreement, the non-prevailing parties, upon request and order by the court, will fully compensate the prevailing parties for all attorneys' fees and/or costs incurred in seeking the enforcement of this Agreement.

*Joint Mot. Submitting Confidential Document and General Waiver*, Attach.1

*Confidential Settlement Agreement and General Waiver* (*Settlement Agreement*).

## IV.   DISCUSSION

### A.   An Ambiguous Provision

First, as the Court interprets the payment provision of the Settlement Agreement, both parties were at fault in failing to fully incorporate Local Rule 67 into the payment terms of the Agreement. Local Rule 67 expressly limits the types of acceptable payment to the Court Registry to "cash, money order, cashier's check or manager's check." D.P.R. Loc. R. 67(d). Cash is self-defining and not contemplated by the Settlement Agreement. A "money order" means "[a] negotiable draft issued by

an authorized entity (such as a bank, telegraph company, post office, etc.) to a purchaser, in lieu of a check, to be used to pay a debt or otherwise transmit funds on the credit of the issuer." BRYAN A. GARNER, BLACK'S LAW DICTIONARY, at 1159 (10th ed. 2014). A "cashier's check" is "[a] check drawn by a bank on itself, payable to another person, and evidencing the payee's authorization to receive from the bank the amount of money represented by the check; a draft for which the drawer and drawee are the same bank, or different branches of the same bank." *Id.* at 287. A "manager's check" is "also known as a 'cashier's check' or 'official check.'" *United States v. Ledée*, 772 F.3d 21, 26 n.2 (1st Cir. 2014). It is "a check written by a bank on its own funds." *Id.*

Paragraph Third of the Settlement Agreement directs the Defendant to "issue and deposit an official check payable to the Clerk of the United States District Court . . .." Assuming the reference to "official check" was also to a "cashier's check" or "manager's check," the Settlement Agreement was ambiguous because it directed SIFCPR to issue an official check and only a bank may issue a cashier's, manager's or official check.

From the events described by the attorneys, on December 20, 2019, SIFCPR and its counsel did not know that an "official check," the term used in the Settlement Agreement, was the same as a "manager's check," the term used in Local Rule 67. *Informative Mot. Regarding Mot. to Consign Funds* at 1. In its January 9, 2020 explanation, SIFCPR observed that it is "a public company of the Government of Puerto Rico, with a well-known reputation for solvency and well-managed finances."

14

*Id.* SIFCPR also wrote that the "Settlement Agreement requires that an official check to consigned with the Clerk of the Court. Nowhere does it state that the same has to be a manager's check." *Id.*

On December 20, 2019, SIFCPR attempted to comply with its inaccurate reading of the Settlement Agreement by issuing a corporate check on its account to the United States District Court. It is apparent that SIFCPR thought it had complied with the Settlement Agreement by issuing the corporate check because it filed the Informative Motion on December 20, 2019, confidently asserting it had made the deposit with the Clerk's Office required by the Settlement Agreement. *Informative Mot. Regarding Docket No. 138* at 1. The Clerk's Office properly rejected the SIFCPR check since it did not comply with the Local Rule and, although SIFCPR does not confirm when it learned of the rejection, the Court assumes it must have been either December 20, 2019, or shortly thereafter.

By contrast, Plaintiff's counsel knew that Local Rule 67 limits the types of acceptable payment to the Court Registry to "cash, money order, cashier's check or manager's check." P.R. LOC. R. 67(d). In fact, Plaintiff's counsel cited *Ledée* in his memorandum, which clarified that the First Circuit interprets an "official check" as the same as a manager's or cashier's check. But instead of placing the language of the Local Rule in the Settlement Agreement, Plaintiff's counsel either drafted or approved language that used a synonym not in the Rule in place of the language of the Rule. The Settlement Agreement, as drafted or approved by Plaintiff's counsel, compounded the problem by stating that SIFCPR could "issue" the official check. If

counsel for both the Plaintiff and Defendant had simply tracked the language of Local Rule 67 in the Settlement Agreement, SIFCPR would likely have complied with its terms on December 20, 2019, and none of the ensuing controversy would have occurred.

### B.    A Series of Events

Then a series of events—some SIFCPR's fault, some not—conspired to delay the issuance of a manager's check. The first part of the delay can certainly be laid at SIFCPR's doorstep. According to its attorney, SIFCPR had only one employee who was authorized to issue the check and that employee went on an extended Christmas vacation. *SIFCPR's Opp'n* at 1. It is astonishing that "a public company of the Government of Puerto Rico, with a well-known reputation for solvency and well-managed finances," *Informative Mot. Regarding Mot. to Consign Funds* at 1, would have only one employee who could issue checks or obtain a manager's check and when that employee was on holiday, no one could act in the employee's stead.

The second part of the delay is also inexcusable: SIFCPR's attorney's office shuts down over the Christmas holidays. The Court does not fault the law firm for taking a Christmas holiday. But, knowing that his law firm would be closed, defense counsel allowed December 31, 2019, to be used in the Settlement Agreement as the critical date by which payment had to be made, knowing that if something went wrong, his law office would be closed in the days leading up to December 31, 2019. Although defense counsel says he was available on his personal cellphone, it is odd that he would have allowed December 31, 2019, to be a critical date in the Settlement

Agreement if he knew his law office would be closed in the days leading up to that critical date.

The third issue was beyond anyone's control, namely the earthquakes in Puerto Rico, which prevented defense counsel from accessing his law office and inhibited SIFCPR from its normal operations.  Defense counsel does not say when his law office was rendered unsafe, but he stated that, following the earthquakes, the first access to his law office was not until January 9, 2020 and that the earthquake presented similar problems for SIFCPR.  *SIFCPR's Opp'n* at 2-3.  SIFCPR deposited the manager's check on January 14, 2020.  *Mot. of Consignment* at 1.

### C.    An Unnecessary Controversy

The Court views this controversy as unfortunate and unnecessary.   Once SIFCPR knew that the Clerk's Office refused its corporate check, the attorneys on both sides should have talked.  Certainly, given SIFCPR's December 20, 2019 attempt to make payment, Mr. Soto-Santiago's counsel must have known that SIFCPR was not going to shirk its payment obligation.  Also, Plaintiff's counsel must have been aware of the well-known practice in Puerto Rico, which includes law offices, of taking an extended holiday during the Christmas season.  Further, Plaintiff's counsel must have known that Puerto Rico experienced a significant series of earthquakes in late December 2019 and early January 2020.  If Plaintiff's counsel had spoken to defense counsel, all of this could have been explained and almost certainly resolved.  Instead, Plaintiff's counsel went to the Court and on January 8, 2020, during the period

defense counsel still could not access his office, fired off a motion that not only demanded immediate payment but attorney's fees and sanctions.

The Court cannot help but think that a conversation between the lawyers would have reassured Plaintiff's counsel that payment was forthcoming and would have paved the way to an amicable resolution.  The same, of course, can be said of defense counsel.[2]  Just as Plaintiff's counsel could have contacted him, he could have contacted Plaintiff's counsel.  A phone call to explain the absent employee, the law office holiday, and the effects of the earthquake on both the law firm and SIFCPR might well have forestalled the Plaintiff's motion and obviated the need for this Court's involvement.

###    D.    The Terms of the Settlement Agreement and the Late Payment

Applying the terms of the Settlement Agreement, the Court concludes that SIFCPR breached the Settlement Agreement by failing to present the Clerk of Courts with an "official check" by December 31, 2010.  Even though SIFCPR may have been confused by the settlement language that contemplated that it would issue an official check, a quick reference to Local Rule 67 would have revealed that the Clerk of Court would not accept an SIFCPR check.  Paragraph Sixth of the Settlement Agreement dictates the sanction for failure to comply with the prompt payment requirement: interest at 4.5% per annum from the date of the judgment to the date of payment.

---

[2]      SIFCPR's counsel notes that "Plaintiff's attorney has attorney Peter Miller's cell phone and have engaged in various conversations in the past.  Thus, a simple phone call would have avoided this situation."  *SIFCPR's Reply* at 1, n.1.  The Court accepts this point, but the same point can be made with equal force concerning SIFCPR's counsel: if Plaintiff's counsel could and should have called him, he could and should have called Plaintiff's counsel.  In fact, the onus to make the call rested with Attorney Miller, whose client had failed to make a timely payment.

Plaintiff's counsel correctly calculated the total amount to equal $476.19 (settlement amount of $99,000 multiplied by the 4.5% interest rate equals $4,455; $4,455 divided by 365 equals $12.21; $12.21 multiplied by the 39 days between the judgment and full satisfaction equals $476.19). *Pl.'s Mot.* at 5. For SIFCPR to pay interest on its late payment is justified by the terms of the Settlement Agreement and common sense because SIFCPR had use of the $99,000 during the period of delayed payment and Mr. Soto Santiago did not.

The Court does not, however, award attorney's fees. Under Paragraph Eighth of the Settlement Agreement, to be entitled to an award of attorney's fees, the fees must have been "necessary for the enforcement of the Agreement." The Court does not find that the Plaintiff's motions and filings were necessary because the Court finds that SIFCPR would have presented an official check to the Clerk of Court on January 14, 2020, regardless of whether the Plaintiff filed his motions and other papers. Even though the Court awarded interest under the terms of the Settlement Agreement, the Court is not convinced that the Plaintiff's filings were necessary to achieve this result. Therefore, the Plaintiff has not demonstrated entitlement to attorney's fees under the terms of the Settlement Agreement.

Finally, the Court denies the Plaintiff's motion for sanctions. There is no reason to impose a sanction (other than interest) against SIFCPR for the delayed payment in the unusual circumstances presented in this case. The SIFCPR payment was only two weeks late and the Court's interest order cures any issue about the time value of money.

E.    Sealing

The Court takes seriously its responsibility to ensure its decisions are as transparent as possible.  "In the civil context, the plaintiff instigates the action, and, except in the most exceptional cases, must be prepared to proceed on the public record."  *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995). A court may order that a "filing be made under seal without redaction," FED. R. CIV. P. 5.2(d); however, the First Circuit requires that the district court first "determine whether the parties have offered sufficient justification for sealing, and . . . articulate the reasons for its decision." *United States v. Kravetz*, 706 F.3d 47, 61 (1st Cir. 2013). "[R]edaction remains a viable tool for separating [information that may legitimately be sealed] from that which is necessary to the public's appreciation of" the decision reached by the Court.  *Id.* at 63.

As the Court's earlier approval of the motions to restrict suggest, the Court regards it as in the public interest to encourage private settlement agreements between parties in civil litigation.  Here, however, one of the parties has already made multiple public filings that include the settlement amount and many—if not all—the details of this dispute, *Mot. to Consign Funds* (ECF No. 148), *Reply to Resp. to Def.'s "Informative Mot. to Consign Funds"* (ECF No. 152), *Informative Mot. Regarding Status of Payment of Settlement Amount* (ECF No. 156), *Mot. of Consignment* (ECF No. 158), and the opposing party has not objected to these public filings, even as both parties continued to file sealed motions and memoranda.  The Court does not view this order or the related filings as containing any information not already publicly

available, and even if this were not the case, the Court views this controversy and its resolution to be a matter of public interest, not only to the parties and their counsel but also as a guide for the future for current counsel and beyond. Therefore, in the Court's view, continued sealing is inappropriate.

## V.    CONCLUSION

The Court GRANTS in part and DENIES in part the Plaintiff's Motion Requesting Disbursement of the Settlement Amount and Order Compelling Defendant to Pay Interest for Delay in Payment, Attorney's Fees and Monetary Sanctions (ECF No. 160). The Court finds that the Defendant breached the payment terms of the Settlement Agreement by failing to remit payment of an official check to the Clerk's Office by December 31, 2019, and under the terms of the Settlement Agreement, the Plaintiff is entitled to an interest payment at 4.5% per annum for the period of delay or $476.19. The Court finds that the Plaintiff has not demonstrated that his attorney's fees were necessary under the terms of the Settlement Agreement and the Court finds that there is no basis under the unusual facts of this case to impose sanctions against the Defendant.

In light of this order, the Court DISMISSES as moot Plaintiff's Motion for Disbursement of Funds, or in the Alternative, to Compel Payment of the Settlement Amount and the Imposition of Attorney's Fees, Costs and Sanctions (ECF No. 146), Defendant's Motion to Consign Funds (ECF No. 148), and Defendant's Informative Motion Regarding Motion to Consign Funds (ECF No. 149).

This order, as well as docket numbers 146, 151, 160, 165, 167, and 169, shall remain under seal for two weeks.  Within those two weeks, if either party wishes to object to unsealing, that party must file a memorandum with the Court explaining what non-public information they believe should be sealed and how such sealing serves the public interest, along with citations of relevant caselaw.  If no objection is received, this order, along with all documents referenced above, will be publicly released.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2020